# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

FILED BY _____ D.C.

05 AUG 30  AM 6: 54

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| ACH FOOD COMPANIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-2589 Ml/V |
| | ) | |
| WISCON CORP., | ) | |
| | ) | |
| Defendant. | ) | |

---

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND VENUE

---

Before the Court is Defendant's Motion to Dismiss for Lack of Jurisdiction and Venue, filed September 15, 2004. Plaintiff filed a partial response to Defendant's motion on October 18, 2004. On November 16, 2004, the Court granted Plaintiff's motion for Rule 56(f) discovery related to issues underlying Defendant's motion to dismiss. After limited discovery was taken, Plaintiff filed another response to Defendant's motion on February 1, 2005. Defendant filed a reply to Plaintiff's response on February 16, 2005. Plaintiff filed a sur-reply on March 24, 2005. For the following reasons, Defendant's motion is DENIED.[1]

### I. BACKGROUND

The instant case is a declaratory judgment action pursuant to 28 U.S.C. § 2201 by which Plaintiff seeks a declaration of

---

[1] Leave is hereby GRANTED for the parties to file their respective responses.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _8-30-05_

95

non-infringement regarding certain trademarks held by Defendant. Plaintiff ACH Food Companies, Inc. ("ACH"), a Delaware corporation with its principal place of business in Memphis, Tennessee, is the "leading value-added edible oils and specialty grocery product company in North America." (Pl.'s Compl. ¶ 6.) ACH has multiple plants across the United States and markets a broad range of products to consumers and the commercial food industry. (Id. ¶ 7.)  Defendant Wiscon Corp. ("Wiscon"), an Illinois corporation with its principal place of business in Lake Forest, Illinois, is a distributor of, *inter alia*, CAPUTO brand foods in the United States.

Wiscon owns U.S. Trademark Registration Nos. 2,464,986, 1,763,053, and 2,009,696, which all relate to the CAPUTO brand. (Def.'s Mot. to File Am. Decl. Ex. Ex. A.)  Wiscon has used the CAPUTO mark on a variety of food products, including oils, wine, olives, barbecue sauce, canned tomatoes and tomato sauces, shortening, cheeses, vinegar, pasta, meats and spices.

In May of 2004, ACH acquired certain food brands including CAPULLO, the leading premium canola oil brand in Mexico, and MAZOLA, a premium corn oil brand in Mexico.  (Pl.'s Compl. ¶ 7.) ACH had previously acquired the MAZOLA corn oil brand in the United States.  (Id. ¶ 8.)  According to the allegations in its Complaint, ACH plans to, and is in the process of, marketing a canola oil in the United States under the brand name "CAPULLO DE MAZOLA."  (Id.)  ACH owns the "CAPULLO DE MAZOLA" word mark and a

design mark that features the name "CAPULLO DE MAZOLA" along with an image of a rosebud above the letters 'pu' in 'CAPULLO'. (Id. ¶ 9.) ACH has filed "intent to use" trademark applications for the "CAPULLO DE MAZOLA" marks. (Id.) Also, according to the allegations in Plaintiff's Complaint:

> ACH has used the CAPULLO DE MAZOLA Marks for canola oil in the United States commerce by way of, *inter alia,* the preparation of samples and communications with one or more potential customers. In addition, ACH is ready, willing and able to use the CAPULLO DE MAZOLA Marks as a brand name in United States commerce. For example, ACH has undertaken extensive preparations to launch United States sales of canola oil under the CAPULLO DE MAZOLA Marks in the near future.

(Id. ¶ 10.)

On July 26, 2004, JoAnne Denison, counsel for Wiscon, sent an e-mail to certain representatives of ACH in Tennessee regarding the prospective use of the CAPULLO DE MAZOLA trademark. That e-mail notes, in pertinent part:

> We not [sic] that on July 13, 2004, you filed a trademark application for registration for CAPULLO DE MAZOLA for "edible oils, shortening and margarine." We have reviewed your specimens and must inform you that unless the words "DE MAZOLA" are used in substantially the same size type face size as CAPULLO, we consider this only to be blatant gamesmanship to trade off of a highly valuable mark which our client has prior rights to. We are not amuzed. [sic] We do intent [sic] to file an opposition proceeding against this mark, if and when it is published for opposition. We also desire to make you aware at this time that further legal action may be undertaken if and when you begin use of any mark containing the word CAPULLO which we consider to be conflicting with our CAPUTO trademark.

(Def.'s Reply Mem. in Supp. of Mot. to Dismiss, Ex. A.)

3

On July 30, 2004, Plaintiff filed its Complaint seeking a declaratory judgment of non-infringement.  On September 15, 2004, Defendant filed its original motion to dismiss.  On November 4, 2004, after Plaintiff had begun to manufacture and sell products bearing the "CAPULLO DE MAZOLA" mark, Plaintiff filed a second Complaint for declaratory relief, seeking to moot any issues relating to the Court's subject matter jurisdiction.  (See ACH Food Companies, Inc. v. Wiscon Corp., No. 04-2892, W.D. Tenn. filed on Nov. 4, 2004.)  On January 27, 2005, the Court consolidated the two cases into the instant case.  (See Order Consolidating Cases, January 27, 2005 (Docket No. 74.))[2]

In its Complaint, ACH requests a declaration that it has the right to use the CAPULLO DE MAZOLA marks in United States Commerce; a declaration that ACH's use of the CAPULLO DE MAZOLA marks in United States commerce does not infringe or otherwise violate any valid trademark rights of Wiscon; and any other legal or equitable relief to which it may be entitled. (Pl.'s Compl. ¶ 21.)

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(2) for lack of personal

---

[2] Because Defendant's original motion to dismiss related to the Court's subject matter jurisdiction, however, Case No. 04-2892 was not administratively closed and remains open pending the Court's ruling on the instant motion. (See January 27, 2005, Order Consolidating Cases at 1.)

jurisdiction, 28 U.S.C. § 1391 for improper venue, and Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## II. STANDARDS OF REVIEW

The Court will address the respective standards of review pertinent to Defendant's motion in turn.

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of [subject matter] jurisdiction on its face ... or it can attack the factual basis for [subject matter] jurisdiction ...." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004).

In the instant case, the Court finds that Defendant attacks the factual basis for jurisdiction - in particular, whether the relevant facts support Defendant's contention that no justiciable controversy exists involving any alleged trademark infringement. When a Rule 12(b)(1) motion attacks the factual basis for subject matter jurisdiction, "the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, 381 F.3d at 516 (citing, inter alia, RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1133-35 (6th Cir. 1996)). In reviewing a Rule 12(b)(1) motion challenging the factual basis for jurisdiction, "a trial court has wide

discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). If a court determines that it lacks subject matter jurisdiction, "the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3).

In the instant case, both parties have attached exhibits to their submissions, including affidavits and other documents relevant to the disposition of Defendant's motion. The Court, utilizing its discretion to allow the presentation of such materials, has reviewed those materials submitted by the parties in support of their respective contentions. The Court finds that neither the submission of additional materials nor a limited evidentiary hearing would aid the Court in the resolution of Defendant's motion.

## B. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a claim for lack of jurisdiction over the person. The plaintiff bears the burden of establishing jurisdiction. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002)(quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002)). A prima facie showing of jurisdiction

6

may be established based upon the plaintiff's presentation of specific facts, by affidavit or otherwise. <u>Theunissen</u>, 935 F.2d at 1458. Where a court does not conduct an evidentiary hearing, the pleadings, depositions, and affidavits are considered in the light most favorable to the plaintiff. <u>Williams v. FirstPlus Home Loan Trust 1996-2</u>, 209 F.R.D. 404, 410 (W.D. Tenn. 2002).

In its determination of a 12(b)(2) motion, the Court "does not weigh the controverting assertions of the party seeking dismissal." <u>Theunissen</u>, 935 F.2d. at 1459. The Court, however, is not required "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." <u>Kerry Steel, Inc. v. Paragon Indus., Inc.</u>, 106 F.3d 147, 153 (6th Cir. 1997). "Dismissal in this procedural posture is proper only if *all* the specific facts which the plaintiff ... alleges collectively fail to state a *prima facie* case for jurisdiction." <u>Id.</u> at 149 (quoting <u>Theunissen</u>, 935 F.2d at 1458).

### C. Rule 12(b)(6)

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true. <u>Saylor v. Parker Seal Co.</u>, 975 F.2d 252, 254 (6th Cir. 1992). Furthermore, the court must construe all of the allegations in

the light most favorable to the non-moving party.  Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974).  "A court may dismiss a [claim
under 12(b)(6)] only if it is clear that no relief could be
granted under any set of facts that could be proved consistent
with the allegations."  Hishon v. King & Spalding, 467 U.S. 69,
73 (1984).

## III. ANALYSIS

Defendant moves to dismiss Plaintiff's Complaint pursuant to
Rule 12(b)(1) for lack of subject matter jurisdiction, Rule
12(b)(2) for lack of personal jurisdiction, 28 U.S.C. § 1391 for
improper venue and Rule 12(b)(6) for failure to state a claim
upon which relief may be granted.  The Court will address these
contentions in turn.

### A. Subject Matter Jurisdiction

Defendant first contends that this Court lacks subject
matter jurisdiction over Plaintiff's declaratory judgment action
because Plaintiff's Complaint fails to allege a justiciable
controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201.
The Declaratory Judgment Act allows Federal courts to entertain
declaratory judgment actions. 28 U.S.C. § 2201.[3]  "The existence

---

[3] 28 U.S.C. § 2201(a) provides:

   In a case of actual controversy within its
   jurisdiction, ... any court of the United States,
   upon the filing of an appropriate pleading, may
   declare the rights and other legal relations of any
   interested party seeking such declaration, whether

                                        (continued...)

8

of an 'actual controversy' in a constitutional sense is necessary
to sustain jurisdiction under the Declaratory Judgment Act."
National Rifle Ass'n of America v. Magaw, 132 F.3d 272, 279 (6th
Cir. 1997)(citations omitted); see also 28 U.S.C. § 2201.  A
justiciable controversy is "distinguished from a difference or
dispute of a hypothetical or abstract character .... It must be a
real and substantial controversy admitting of specific relief
through a decree of a conclusive character, as distinguished from
an opinion advising what the law would be upon a hypothetical
state of facts. Id. (quoting Aetna Life Ins. Co. of Hartford v.
Haworth, 300 U.S. 227, 240-41 (1937)).  For a declaratory
judgment to issue, there must be a dispute which "calls, not for
an advisory opinion upon a hypothetical basis, but for an
adjudication of present right upon established facts." Ashcroft
v. Mattis, 431 U.S. 171, 172 (1977) (citations omitted).

The plaintiff bears the burden of establishing subject
matter jurisdiction.  Theunissen, 935 F.2d at 1458.  In deciding
whether the plaintiff has carried its burden to show that a
justiciable controversy exists, "the court must look to the state
of affairs as of the filing of the complaint; a justiciable
controversy must have existed at that time." International

---

(...continued)

or not further relief is or could be sought. Any such declaration
shall have the force and effect of a final judgment or decree and
shall be reviewable as such.
28 U.S.C. § 2201(a).

Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir. 1980); see also Harper v. AutoAlliance Intern., Inc., 392 F.3d 195, 210 (6th Cir. 2004)(noting that whether subject matter jurisdiction exists is determined by looking to the complaint at the time a petition for removal was filed).

In the context of an action for a declaratory judgment of non-infringement of a trademark, there are two prerequisites for establishing that an "actual controversy" exists.[4] Windsurfing Intern. Inc. v. AMF Inc., 828 F.2d 755, 757-58 (Fed. Cir. 1987); see also International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210-11 (7th Cir. 1980)(finding identical requirements apply in patent cases).[5] First, the declaratory plaintiff must have a real and reasonable apprehension of litigation. Windsurfing, 828 F.2d at 757-58 (citing Topp-Cola Co. v. Coca-Cola Co., 314 F.2d 124, 125-26 (2nd Cir. 1963)); International Harvester, 623 F.2d at 1210-11 (citations omitted); see also Robin Products Co. v. Tomecek, 465 F.2d 1193, 1195-96 (6th Cir. 1972)(finding a justiciable controversy based upon declaratory

_____

[4] Both parties cite authority from the United States Court of Appeals for the Seventh Circuit regarding the requirements to establish an actual controversy in the context of a declaratory judgment action involving intellectual property. The Court finds the reasoning of the Seventh and Federal Circuits persuasive and adopts their precedents in the instant case.

[5] The United States Court of Appeals for the Federal Circuit has found that declaratory judgment actions involving trademark cases are analogous to those involving patent cases and, therefore, that the same precedents apply regarding issues of subject matter jurisdiction. Windsurfing, 828 F.2d at 757.

plaintiff showing that defendant's course of action would be "regarded by a reasonable man as a charge of [patent] infringement and was so regarded by the party seeking declaratory relief").  Second, the declaratory plaintiff must have engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant.  <u>Windsurfing</u>, 828 F.2d at 757-58 (citations omitted); <u>International Harvester</u>, 623 F.2d at 1210-11 (citing <u>Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.</u>, 439 F.2d 871, 875 (1st Cir. 1971) and <u>Wembley, Inc. v. Superba Cravats, Inc.</u>, 315 F.2d 87, 89-90 (2d Cir. 1963)).

Defendant contends that the Court lacks subject matter jurisdiction because ACH was not in reasonable apprehension of the threat of an infringement suit and had not begun selling the allegedly infringing article at the time it filed its original Complaint.  Plaintiff contends that Wiscon's July 26, 2004, e-mail placed it in reasonable apprehension of litigation and that, at the time it filed its Complaint, it had undertaken substantial steps towards marketing its allegedly infringing products.

With respect to the first factor, a reasonable apprehension exists when there is "an implied charge, or a course of conduct on the part of the defendant which would cause a reasonable man to fear that he or his customers face an infringement suit or threat of one." <u>G. Heileman Brewing Co. v. Anheuser-Busch, Inc.</u>, 873 F.2d 985, 990 (7th Cir. 1989)(citations and internal quotation marks omitted).  A reasonable apprehension of an

infringement suit may be based upon the defendant's assertion of exclusive rights against another party. Id. (citations omitted).

Having reviewed the record and the parties' submissions, the Court finds that Defendant's July 26, 2004, e-mail was sufficient to place ACH in a reasonable apprehension of litigation.  In particular, the e-mail indicates that Wiscon considered the use of the CAPULLO DE MAZOLA trademark to amount to "blatant gamesmanship to trade off of a highly valuable mark which our client has prior rights to" and that "further legal action may be undertaken if and when you begin use of any mark containing the word CAPULLO which we consider to be conflicting with our CAPUTO trademark." (Def.'s Reply Mem. in Supp. of Mot. to Dismiss, Ex. A.)  These statements indicate at least an implied, if not express, threat of a trademark infringement suit and clearly indicate an assertion of the exclusive right to use the CAPUTO trademark and to exclude Plaintiff's use of the CAPULLO DE MAZOLA mark.

Wiscon contends that the July 26, 2004, e-mail was merely part of a settlement negotiation regarding pending matters before the Trademark Trial and Appeal Board ("TTAB").  However, the remarks excerpted above reference "further legal action" independent of the TTAB proceeding.  Wiscon also contends that the e-mail was provoked by a previous e-mail from ACH requesting Wiscon's position regarding whether the mark CAPULLO DE MAZOLA infringes on Wiscon's CAPUTO marks.  However, Wiscon's motivation

12

for making the above statements is not relevant to the analysis – rather, the inquiry focuses upon whether ACH was reasonable in perceiving the e-mail as a threat of litigation.  Accordingly, the Court finds that ACH has met its burden to prove that it had a real and reasonable apprehension of litigation.

With respect to the second factor – that the declaratory plaintiff must have engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant – the plaintiff must show that it possessed the "apparent ability and definite intention ... to manufacture and sell a product similar to ... defendant's...."  Heileman, 873 F.2d at 990.  It is not necessary that a declaratory judgment plaintiff engage in the actual manufacture, use, or sale of a potentially infringing product in order to meet its burden.  Int'l Harvester, 623 F.2d at 1215; Heilman, 873 F.2d at 990.  Rather,

> [t]he plaintiff's interest is sufficiently "real" where
> he alleges that he is actively preparing to produce the
> article in question.  This is the last point before the
> point of no return.  Any further action on his part may
> well cause him to be liable as an infringer, and the
> [Declaratory Judgment] Act is designed to prevent the
> necessity of acting at one's peril.  By making active
> preparations he has shown that he has more than a mere
> speculative interest in the validity and applicability
> of the [trademark].  His interest is direct, real, and
> immediate, not a mere academic one.

Heilman, 873 F.2d at 990-91.  (citing 6A J. MOORE, MOORE'S FEDERAL PRACTICE ¶¶ 57.20, at 57-217).  A mere desire to utilize a potentially infringing mark, absent any action to do so, however,

is not sufficient.  See Windsurfing, 828 F.2d at 758 (finding second prong not satisfied and therefore no justiciable controversy where declaratory plaintiff merely indicated a desire to use defendant's trademark but had not taken any action to do so).

Defendant contends that, at the time the original Complaint was filed, Plaintiff had not yet begun to sell any potentially infringing products and therefore cannot meet the second prong. Plaintiff contends that it had undergone significant efforts in preparation to market products bearing the potentially infringing marks.  Having reviewed the record and the parties' submissions, the Court finds that Plaintiff has presented sufficient evidence to meet the second prong.

In particular, at the time it filed its original Complaint, Plaintiff had prepared samples of products to be sold with the CAPULLO DE MAZOLA mark, circulated those samples to potential customers, and made arrangements for large shipments of canola oil, bottles, and labels having the CAPULLO DE MAZOLA mark to be sent to the customers to whom samples had been sent.  On that basis, the Court finds that Plaintiff had more than a mere desire to market a potentially infringing product - rather, the evidence demonstrates that it had actively prepared to market products with the CAPULLO DE MAZOLA mark at the time it filed its Complaint.  Accordingly, the Court finds that Plaintiff has met

14

its burden to prove that this Court has subject matter jurisdiction over its declaratory judgment action.

**B.     Personal Jurisdiction and Venue**

Defendant next moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction and improper venue pursuant to Rule 12(b)(2) and 28 U.S.C. § 1391, respectively.  A federal court has personal jurisdiction over a defendant if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process. <u>Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog</u>, 954 F.2d 1174, 1176 (6th Cir. 1992).  In a suit such as the instant case that alleges federal question jurisdiction, venue is proper under § 1391 in any judicial district in which the Defendant is properly subject to personal jurisdiction. <u>See</u> 28 U.S.C. § 1391(b) and (c).[6]

---

[6] 28 U.S.C. § 1391 provides, in relevant part:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
>
> (continued...)

In Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause.  Tenn. Code Ann. § 20-2-214(a)(6)(2004); <u>Payne v. Motorists' Mut. Ins. Co.'s</u>, 4 F.3d 452, 455 (6th Cir. 1993). Therefore, the Court need only determine whether the assertion of personal jurisdiction over Defendant would violate the Due Process Clause.  <u>Bridgeport Music, Inc. v. Still N the Water Publ'g</u>, 327 F.3d 472, 477 (6th Cir. 2003).  Consistent with the Due Process Clause, courts can "exercise personal jurisdiction over a defendant so long as that defendant has 'certain minimum contacts' with the forum such that the exercise of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  <u>Cupp v. Alberto-Culver USA, Inc.</u>, 308 F.Supp.2d 873, 877 (W.D. Tenn. 2004)(quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be either general or specific. General jurisdiction arises from the Defendant's contacts with the forum state.  "Unlike the specific jurisdiction analysis,

---

(...continued)

        ...

        (c) For purposes of venue under this chapter, a
        defendant that is a corporation shall be deemed to
        reside in any judicial district in which it is subject
        to personal jurisdiction at the time the action is
        commenced.

28 U.S.C. § 1391.

which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind ...." <u>Dickson Marine Inc. v. Panalpina</u>, 179 F.3d 331, 339 (5th Cir. 1999) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984)).  A defendant may be subject to general jurisdiction only when it "has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant."  <u>Kerry Steel</u>, 106 F.3d at 149 (citing <u>Helicopteros</u>, 466 U.S. at 414-15 & nn. 8-10; <u>Third Nat'l Bank in Nashville v. WEDGE Group, Inc.</u>, 882 F.2d 1087, 1089 (6th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1058 (1990)).  "General jurisdiction is proper <u>only</u> where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" <u>Bird</u>, 289 F.3d at 873 (citing <u>WEDGE</u>, 882 F.2d at 1089)(emphasis added).

Specific jurisdiction, on the other hand, arises from contacts that are related to the cause of action.  With respect to specific jurisdiction, the Sixth Circuit maintains a three-part test to determine whether a Court can exercise jurisdiction over a Defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a

consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000)(quoting Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

It is undisputed that Defendant has the following contacts with the State of Tennessee: Defendant sent the July 26, 2004, e-mail to Plaintiff in Tennessee indicating that it believed certain uses of the CAPULLO DE MAZOLA mark may be infringing and that it may litigate to defend its mark; Defendant has telemarketed its products to potential customers in Tennessee (See Appx. To Pl.'s Mem. in Supp. of its Resp. to Def.'s Mot. to Dismiss, Exs. C(5) and D(1)); and Defendant has seven regular customers in Tennessee that purchased over $100,000 worth of products in 2004.[7] (Dec. Of Jerry Jack, attached as Ex. D. to Def.'s Reply Mem. in Supp. of Mot. to Dismiss.)[8]

---

[7] It is not clear from the record before the Court how much of these sales involved products bearing the CAPUTO mark. However, attachments to Defendant's memorandum in support of its motion for summary judgment appear to indicate that the majority of Defendant's products bear the CAPUTO mark.  (See Def.'s Mem. of Facts and Law in Supp. of Mot. to Dismiss for Lack of Jurisd. and Venue, Ex. C.)

[8] Plaintiff also contends that Defendant has "routinely called, e-mailed, and faxed businesses in Tennessee" and that it has "developed products specifically for Tennessee customers,

## (1) General Personal Jurisdiction

The Court first determines whether it can exercise general jurisdiction over Defendant.  The Supreme Court, in Helicopteros, determined that the defendant, a Colombian corporation, did not maintain sufficient contacts with Texas to allow a Texas state court to exercise general jurisdiction over the Defendant.[9] Helicopteros, 466 U.S. at 418-19.  In that case, the corporation's contacts with Texas included the following: negotiating a contract in Texas; accepting checks drawn on a Texas bank; purchasing close to 80% of its fleet of helicopters as well as other spare parts and accessories in Texas; and sending pilots to Texas for training.  Id. at 411, 416.

In the case at bar, the Court finds that the collective group of contacts that Plaintiff alleges Defendant has with the State of Tennessee are not so continuous and systematic as to create general personal jurisdiction over Defendant.  Although it is undisputed that Defendant does some business with customers in Tennessee, merely doing business with citizens of a state does

provided customer and technical services regarding products, conducted credit checks, and sent product samples."  (Pl.'s Resp. to Def.'s Mot. to Dismiss at 10.)  The Court finds these asserted contacts, however, to be subsumed by the particular contacts described above.

[9] In Helicopteros, the defendant owned a helicopter which crashed in Peru, killing four U.S. citizens, among others.  466 U.S. at 409-10.  The survivors and representatives of the four U.S. citizens brought a wrongful death action in Texas.  Id. at 412.

not confer general jurisdiction over an out-of-state defendant. Bird, 289 F.3d at 874. Additionally, it is undisputed that Defendant maintains no place of business, bank account, local sales force, or local office in Tennessee.

Moreover, the United States Court of Appeals for the Sixth Circuit has found the exercise of general jurisdiction to be inappropriate in circumstances where a defendant's connections to the forum state were significantly more substantial than the case at bar. See WEDGE, 882 F.2d at 1089 (finding exercise of general jurisdiction not appropriate where out-of-state defendant was the 100% owner of a corporation that conducted business in Tennessee, whose directors met as often as monthly in Tennessee to review and direct the corporation's operations; defendant was a party to a tax sharing agreement under which defendant shared income tax liability with subsidiary Tennessee companies; defendant officers participated in negotiations between the plaintiff and the corporation regarding a loan agreement, and, in conjunction with those negotiations, deposited $7.5 million in a checking account maintained at a bank branch in Tennessee; and defendant executed a "Tax Receivable Agreement" in Tennessee); Nationwide Mut. Ins. Co. v., Tyrg Intern. Ins. Co., 91 F.3d 790, 793-94 (6th Cir. 1996)(finding exercise of general jurisdiction inappropriate where defendant had entered into several reinsurance agreements

with in-state corporations);[10] <u>but see</u> <u>Michigan Nat. Bank v.</u>
<u>Quality Dinette, Inc.</u>, 888 F.2d 462, 466 (6th Cir. 1989) (finding
exercise of general jurisdiction appropriate where defendant
retained an independent sales representative in the state,
conducted mail order solicitations of Michigan businesses, made
over 400 sales totaling over $625,000 in 1986 and 1987, and made
at least one sale in Michigan each and every month for two
consecutive years).

### (2) Specific Personal Jurisdiction

The Court next considers whether specific personal
jurisdiction exists over the Defendant.  The first prong of the
three-part <u>Mohasco</u> test requires that the Court determine whether
Defendant has purposefully availed itself of the privilege of
acting in Tennessee or causing a consequence in the state.
<u>Mohasco</u>, 401 F.2d at 381.  "The 'purposeful availment'
requirement is satisfied when the defendant's contacts with the
forum state proximately result from actions by the defendant

---

[10] The United States Court of Appeals for the Fifth Circuit
came to a similar conclusion in <u>Wilson v. Belin</u>, 20 F.3d 644, 650
(5th Cir. 1994)(finding exercise of general jurisdiction not
appropriate where out-of-state defendant lawyer worked on
approximately one project per year for Texas law firms; gave a
legal seminar in Texas; served as a *pro bono* consultant to a
Texas historical society; traveled to Dallas, Texas twice; wrote
a letter to the editor of a Texas newspaper; wrote books and a
newspaper article circulated in Texas; gave interviews to Texas
reporters; visited the Texas School Book Depository; and engaged
in discussions with an investment banking firm in Texas on behalf
of a nonresident corporation in which he had an interest).

[itself] that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996) (internal quotation marks omitted).

As noted above, it is undisputed that Defendant maintains no place of business, bank account, local sales force, or local office in Tennessee. However, the physical presence of Defendant or its agents is not required in order for a court to find that a defendant transacted business within a state. Mohasco, 401 F.2d at 382 (noting that soliciting business by mail, transmission of radio broadcasts, and sending items into the state to be sold by independent contractors constitute the transaction of business in the state). Here, it is undisputed that Defendant does business with seven customers who are located in the State of Tennessee, with total sales to those customers amounting to over $100,000 in 2004. (Dec. Of Jerry Jack, attached as Ex. D. to Def.'s Reply Mem. in Supp. of Mot. to Dismiss.) It is likewise undisputed that Defendant has actively solicited business in Tennessee. Accordingly, Defendant has purposely availed itself of the privilege of doing business in Tennessee.

Additionally, the Court finds that Defendant intended to cause a consequence in Tennessee by sending the July 26, 2004, e-mail to Plaintiff. See In-Flight Devices Corp. v. Van Dusen Air,

Inc., 466 F.2d 220, 235 (6th Cir. 1972) ("A letter or a telephone call may, in a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant or its agents.")  In particular, the logically intended consequence of that e-mail was to discourage Plaintiff, a Tennessee corporation, from marketing products with the CAPULLO DE MAZOLA mark in and outside of Tennessee by threatening the possibility of trademark litigation. See Mad Hatter, Inc. v. Mad Hatters Night Club Co., 399 F.Supp 889, 891-92 (E.D. Mich. 1975)(finding that defendant purposely availed itself of privilege of conducting business in forum state by sending letter to plaintiff claiming trademark infringement, asking for it to cease using allegedly infringing name, and threatening suit); see also B & J Mfg. Co. v. Solar Industries, 483 F.2d 594, 598-99 (8th Cir. 1973) (finding letters threatening suit for patent infringement were designed to reduce competition and thereby improve sender's marketing position and, therefore, constituted transaction of business in state to which letters were sent). Accordingly, the Court finds that Plaintiff has satisfied the first prong of the Mohasco test.

The Court next determines whether Plaintiff's cause of action arises from Defendant's contacts with the State of Tennessee.  Here, Plaintiff's declaratory judgment action was spurred by Defendant's July 26, 2004, e-mail, which the Court has

found to be a basis upon which Defendant purposely availed itself of the privilege of doing business in and causing a consequence in Tennessee. Moreover, Plaintiff's action relates to Defendant's sale of items bearing its mark to customers in Tennessee. Accordingly, the Court finds that Plaintiff's cause of action arises from Defendant's contacts with the State of Tennessee.

Finally, the Court must determine whether Defendant's acts or the consequence caused by Defendant have a substantial enough connection with the State of Tennessee to make the exercise of jurisdiction over the defendant reasonable. Ultimately, this determination depends upon "whether Tennessee has an interest in resolving the conflict at issue." Mohasco, 401 F.2d at 384. When the first two factors in the Mohasco test have been satisfied, however, "resolution of the third involves merely ferreting out the unusual cases where that interest cannot be found." Id. Plaintiff in this action is a Tennessee corporation that intends to market products bearing the disputed CAPULLO DE MAZOLA mark within and outside of Tennessee. Defendant, which sells its products to Tennessee customers under its CAPUTO trademark that is allegedly infringed by Plaintiff's mark, sent an e-mail communication to Plaintiff in Tennessee noting its intent to oppose Plaintiff's mark and apprising it of the possibility of litigation regarding that mark. On that basis,

24

the Court finds that a sufficiently substantial connection with the State of Tennessee exists in order to make the exercise of jurisdiction over Defendant reasonable.

In its reply, Defendant contends that, notwithstanding the relevant Mohasco factors, the Court should find that Defendant is not subject to personal jurisdiction in Tennessee because litigating in Tennessee would pose an unreasonable burden on Defendant and the State of Tennessee does not have an interest in having this suit litigated in Tennessee. The determination of the reasonableness of the exercise of personal jurisdiction depends upon an evaluation of the following factors: the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102, 113 (1987). Having reviewed the record and considering all of these factors, the Court finds that the exercise of jurisdiction over Defendant is reasonable. As noted above, Plaintiff has shown that Defendant has sufficient contacts with the State of Tennessee so that the exercise of personal jurisdiction is appropriate. Although Defendant contends that it will be an unreasonable burden to have to defend suit in

25

Tennessee, the fact that it would be more convenient for Defendant to litigate in the state of its principal place of business does not mean that the Court's finding of personal jurisdiction in Tennessee is unreasonable. Moreover, the State of Tennessee has an interest in providing a forum for a Tennessee corporation to obtain a declaratory judgment involving products that Defendant has contended may infringe its trademark, and Plaintiff has an interest in obtaining that requested relief. Finally, the Court finds that allowing the suit to proceed in Tennessee will further the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.

Accordingly, the Court finds based upon the undisputed facts noted above that Defendant is properly subject to personal jurisdiction in Tennessee and that venue is proper pursuant to 28 U.S.C. § 1391. Defendant's motion to dismiss on the basis of personal jurisdiction and improper venue is therefore DENIED.

### C. Transfer of Venue

In the conclusion to its reply brief, Defendant alternatively requests that this Court transfer this case to the Northern District of Illinois. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought." 28
U.S.C. § 1404(a). Defendant requests a transfer to the Northern
District of Illinois because Defendant's principal place of
business is located in the Western District of Illinois and,
accordingly, relevant witnesses and documents are located in that
district.

A decision to transfer a case pursuant to § 1404(a) lies
within the discretion of the district court. <u>Bunting ex rel. Gray</u>
<u>v. Gray</u>, No. 99-1752, 2 Fed.Appx. 443, 448, 2001 WL 69347, *5
(6th Cir. Jan. 17, 2001)(citing <u>Norwood v. Kirkpatrick</u>, 349 U.S.
29, 31-33 (1955)). Having reviewed the record and the parties'
submissions, the Court finds that Defendant is properly subject
to personal jurisdiction in Tennessee, that venue is proper in
the Western District of Tennessee pursuant to 28 U.S.C. § 1391,
and that a transfer of venue is not required in the interests of
justice and for the convenience of parties and witnesses.
Accordingly, Defendant's request for a change of venue is DENIED.

### D. Failure to State a Claim upon which Relief May be Granted

Defendant next contends that Plaintiff's claim should be
dismissed pursuant to Rule 12(b)(6) for failure to state a claim
upon which relief may be granted. In its motion, however,
Defendant contends that it should prevail on the merits of
Plaintiff's claim for a declaratory judgment of non-infringement
of Defendant's trademarks, rather than supporting its contention

27

that Plaintiff's claim should be dismissed pursuant to Rule 12(b)(6). Accepting all of the well-pled allegations in the Complaint as true and construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff's Complaint alleges sufficient facts which, if proven true, could establish Plaintiff's entitlement to the relief sought. Accordingly, Defendant's motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) is DENIED.

## IV. CONCLUSION

For the reasons stated, Defendant's motion to dismiss Plaintiff's complaint is DENIED.

So ORDERED this **29** day of August, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

28

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 95 in case 2:04-CV-02589 was distributed by fax, mail, or direct printing on August 30, 2005 to the parties listed.

---

Charles F. Morrow
BUTLER SNOW O'MARA STEVENS & CANADA, PLLC
6075 Poplar Ave.
Ste. 500
Memphis, TN 38119

Peter E. Mims
VINSON & ELKINS, L.L.P.
1001 Fannin St.
2300 First City Tower
Houston, TX 77002--676

Lisa M. Martin
BUTLER SNOW O'MARA STEVENS & CANADA, PLLC
6075 Poplar Ave.
Ste. 500
Memphis, TN 38119

John J. Edmonds
VINSON & ELKINS, L.L.P.
1001 Fannin St.
2300 First City Tower
Houston, TX 77002--676

JoAnne M. Denison
DENISON & ASSOC., PC
212 W. Washington St.
Ste. 2004
Chicago, IL 60606--160

Robert L. Crawford
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Honorable Jon McCalla
US DISTRICT COURT